UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SMARTHEALTH, INC. d/b/a SMARTPRACTICE, an Arizona corporation, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 03 C 3417 Judge Joan H. Lefkow |
| SHEN WEI (USA), INC., a California corporation, and MEDLINE INDUSTRIES, INC., an Illinois corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants/counter-plaintiffs, Shen Wei (USA), Inc. and Medline Industries, Inc. ("defendants"), have moved to strike paragraphs 68-72 of the Second Amended Answer and Affirmative Defenses to Counterclaims filed by plaintiff/counter-defendant, Smarthealth, Inc. ("Smarthealth"). For the reasons stated below, the motion is granted.

### Background

On May 21, 2003, Smarthealth filed suit against defendants seeking a declaratory judgment that it did not violate a November 22, 2002 settlement agreement between the parties and that it does not infringe certain patents owned by defendant Shen Wei (USA), Inc. Defendants responded by filing four counterclaims: 1) breach of the settlement agreement; 2) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); 3) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 *et seq.*; and 4) violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510 *et seq.*

In its Amended Answer to defendants' counterclaims, Smarthealth alleged three affirmative defenses: 1) failure to state a claim upon which relief can be granted; 2) unclean hands; and 3) reservation of right to assert additional affirmative defenses and to supplement those asserted upon discovery of information regarding counterclaims. On June 16, 2004, the court granted defendants' motion to strike Smarthealth's affirmative defenses, holding that the first and third affirmative defenses were not proper affirmative defenses and that Smarthealth had not properly pleaded its affirmative defense of unclean hands. *See* Order of June 16, 2004. The court granted Smarthealth leave to file an amended pleading setting forth proper affirmative defenses.

On June 23, 2004, Smarthealth filed its Second Amended Answer and Affirmative Defense, which contains an amended pleading of Smarthealth's unclean hands defense. Paragraphs 68-72 of the amended pleading allege the following:

> 68. The Aloe*touch* glove is marketed and sold as a medical device. As a result, the glove's manufacture, labeling and sale are governed by, among other things, the Food, Drug & Cosmetic Act, the United States Food & Drug Administration (the "FDA") and numerous related regulations. As all competitors in this industry are required to comply with FDA regulations and advertising limitations, if one competitor goes beyond those regulations and limitations, the other competitors are harmed in the marketplace.
> 69. Counter-Plaintiffs' ability to market and sell their Aloe*touch* gloves in the United States stems from clearance by the FDA through the Section 510(k) process.
> 70. The FDA has not approved or cleared labeling and advertising that claims that aloe vera is effective as an active ingredient in any product for humans (including gloves). Although SmartHealth limits its advertising in order to comply with these FDA limitations, Counter-Plaintiffs are competing unfairly by going beyond these limitations.
> 71. Although not part of their 510(k) application and related submissions, Counter-Plaintiffs falsely represent to their customers, among other things, that the aloe vera is an active ingredient -- labeling the gloves as containing "Active Aloe." Counter-Plaintiffs claim and represent to their customers that the aloe vera gloves have healing and therapeutic benefits. Counter-Plaintiffs further claim that the "aloe vera gel which coats [the Aloetouch glove] naturally moisturizes and hydrates your skin, keeping it soft and healthy." Counter-Plaintiffs also claim in their advertising that the "aloe [vera] gel

[on its glove] penetrates and helps moisturize dry skin." They further claim the aloe vera "soothes itching and burning and brings relief to cracked, chapped hands." None of these claims is permitted.

72. Counter-Plaintiffs' marketing, advertising, and selling of its Aloe*touch* gloves is misleading and unfair in that it violates FDA restrictions that Smarthealth must and does follow, thereby competing unfairly.

(Second Amended Answer and Affirmative Defense ¶¶ 68-72.) Defendants have moved to strike these paragraphs pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

## Discussion

Federal Rule of Civil Procedure 12(f) provides that upon motion of a party "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Pro. 12(f). Motions to strike are generally disfavored and "will be granted only if the affirmative defenses are insufficient as a matter of law or present no questions of law or fact." *MAN Roland Inc. v. Quantum Color Corp.*, 57 F. Supp. 2d 576, 578 (N.D. Ill. 1999).

Defendants argue that paragraphs 68-72 should be stricken because the affirmative defenses alleged therein would necessarily require the court to interpret and apply the Food, Drug, and Cosmetic Act, 21 C.F.R. 146.135 *et seq.* ("FDCA") or FDA regulations – a task that is within the exclusive purview and particular expertise of the FDA. Section 337(a) of the FDCA provides that "all such proceedings for the enforcement, or to restrain violations of [the Act] shall be in the name of the United States." Construing this language, courts have repeatedly held that the FDCA does not create a private right of action to enforce or restrain the provisions of the FDCA or FDA regulations. *See, e.g., Pacific Trading Co. v. Wilson & Co.*, 547 F.2d 367, 370 (7th Cir. 1976); *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 1989 WL 152670, at *2 (N.D.

3

Ill. Nov. 29, 1989) ("*Grove Fresh II*"). Consequently, a party may not use the Lanham Act to assert, in effect, a violation of the FDCA, and a party "may not maintain a Lanham Act claim if the claim requires direct application or interpretation of the FDCA or FDA regulations." *Sirius Labs., Inc. v. Rising Pharmaceuticals, Inc.*, 2004 WL 51240, at *1 (N.D. Ill. Jan. 7, 2004). "[S]uch a claim would allow a private litigant to interfere with the FDA's own investigatory time-table and prosecutorial decision-making [and] would force the Court to rule directly on the legality of . . . conduct before the FDA has had a chance to do so." *Id.* Thus, a district court should not "determine preemptively how a federal agency will interpret and enforce its own regulations." *Summit Tech, Inc. v. High-Line Med. Instruments Co.*, 933 F. Supp. 918, 932 (C.D. Cal. 1996).

Some courts have held, however, that certain false statements or misrepresentations are actionable under the Lanham Act "even if their truth may be generally within the purview of the FDA." *Sirius*, 2004 WL 51240, at *1; *see also Grove Fresh Distributors, Inc. v. Flavor Fresh Foods, Inc.*, 720 F. Supp. 714, 716 (N.D. Ill. 1989) ("*Grove Fresh I*"); *Grove Fresh II*, 1989 WL 152670, at *3; *Genderm Corp. v. Biozone Labs.*, 1992 WL 220638, at *12 (N.D. Ill. Sept. 3, 1992); *Healthpoint, Ltd. v. Ethex Corp.*, 273 F. Supp. 2d 817 (W.D. Tex. 2001). In *Sirius*, for example, the plaintiff brought a false advertising claim alleging that defendant's label "anthralin cream 1% USP" was false and misleading because the defendant's product had less than 1% anthralin as defined by the United States Pharmacopia ("USP"), a not-for-profit organization entrusted by the FDA with establishing standards that ensure the quality of medicine. 2004 WL 51240, at *1. The defendant argued that the claim should be dismissed because the issue of whether the product is misbranded is an issue within the exclusive purview of the FDA. *Id.* at *2.

The court rejected the defendant's argument, holding that resolution of the claim would not require the court to perform "a direct application or interpretation of the FDCA or FDA regulations." *Id.* at *3. The court reasoned that no such interpretation was required because the truth of the labeling claim could be determined as a matter of fact. *Id.* ("[Defendant's] product either meets the USP standard . . . or it does not, and therefore my decision on the issue would not usurp any function otherwise delegated to the FDA.").

Similarly, in *Grove Fresh I* and *Grove Fresh II*, the plaintiff sued defendants for falsely advertising their products as "100% orange juice from concentrate" even though additional ingredients had been added. The *Grove Fresh I* court denied the defendant's motion to dismiss, holding that it was not an impermissible attempt to recover damages for the misbranding of food in violation of the FDCA:

> [Plaintiff] Grove Fresh relies on the FDA regulation [that defines "orange juice from concentrate"] merely to establish the standard of duty which defendants allegedly failed to meet. Nothing prohibits Grove Fresh from using the FDCA or its accompanying regulations in that fashion. . . . Grove Fresh does not base its claim solely on the FDCA or FDA regulations. Grove Fresh alleges that defendants have violated section 43(a) of the Lanham Act. Even without the FDA regulation defining "orange juice from concentrate," Grove Fresh could attempt to establish a violation of section 43(a). Grove Fresh would simply need to provide other evidence establishing the proper market definition of "orange juice from concentrate."

720 F. Supp. at 716. In *Grove Fresh II*, the court found it "difficult to justify the use of the FDCA to establish a crucial element of a private cause of action under the Lanham Act." Nonetheless, the court refused to dismiss plaintiff's Lanham Act claim because "[s]triking all reference to the FDCA regulations leaves a still valid (if hard to prove) complaint." 1989 WL 152670, at *3.

The fundamental question in each of these cases, as in the instant case, is whether the claims rely on an interpretation of the FDCA or FDA regulations or whether they can be resolved solely through a determination of facts. Here, the answer is clearly the former. Smarthealth explicitly alleges that defendants' "marketing, advertising, and selling of its Aloe*touch* gloves is misleading and unfair *in that it violates FDA restrictions* that Smarthealth must and does follow, thereby competing unfairly." (Am. Compl. ¶ 72) (emphasis added.) To determine the validity of that defense, the court would necessarily have to determine if defendants' labeling and advertising do in fact violate the FDCA or FDA regulations. In other words, the defense would require the court to "determine preemptively how a federal agency will interpret and enforce its own regulations." *Summit Tech*, 933 F. Supp. at 932. This is impermissible. Thus, the allegations in paragraphs 68-72 cannot provide grounds for Smarthealth's unclean hands defense.

Smarthealth argues that defendants do not contest several other grounds for its unclean hands defense and "concede that many paragraphs of the affirmative defense are proper and well-pled." Smarthealth concludes, without citation or further argument, that "for this reasons alone, Defendants' motion to strike should be denied." (Resp., at 4-5.) This argument is frivolous. Nothing in Rule 12(f) requires the court to make an "all or nothing" decision on a motion to strike. The court may order stricken from any pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The allegations in paragraphs 68-72 are immaterial because they do not – indeed, cannot – establish any element of Smarthealth's unclean hands defense. Thus, the court orders them stricken.

## CONCLUSION

For the reasons set forth above, the court grants defendants' motion to strike portions of plaintiff's affirmative defenses to counterclaims [#64]. Paragraphs 68-72 of plaintiff's Second Amended Answer and Affirmative Defenses to Counterclaims are stricken.

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: January 20, 2005